(Slip Opinion)          OCTOBER TERM, 2015          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ENCINO MOTORCARS, LLC *v.* NAVARRO ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 15–415.   Argued April 20, 2016—Decided June 20, 2016

The Fair Labor Standards Act (FLSA) requires employers to pay overtime compensation to covered employees who work more than 40 hours in a given week.  In 1966, Congress enacted an exemption from the overtime compensation requirement for "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles" at a covered dealership.  Fair Labor Standards Amendments of 1966, §209, 80 Stat. 836, codified as amended at 29 U. S. C. §213(b)(10)(A).  Congress authorized the Department of Labor to promulgate necessary rules, regulations, or orders with respect to this new provision.  The Department exercised that authority in 1970 and issued a regulation that defined "salesman" to mean "an employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the vehicles . . . which the establishment is primarily engaged in selling."  29 CFR §779.372(c)(1) (1971).  The regulation excluded service advisors, who sell repair and maintenance services but not vehicles, from the exemption.  Several courts, however, rejected the Department's conclusion that service advisors are not covered by the statutory exemption.  In 1978, the Department issued an opinion letter departing from its previous position and stating that service advisors could be exempt under 29 U. S. C. §213(b)(10)(A).  In 1987, the Department confirmed its new interpretation by amending its Field Operations Handbook to clarify that service advisors should be treated as exempt under the statute.  In 2011, however, the Department issued a final rule that followed the original 1970 regulation and interpreted the statutory term "salesman" to mean only an employee who sells vehicles.  76 Fed. Reg. 18859.  The Department gave little explanation for its decision to abandon its decades-old practice of treating service advisors

as exempt under §213(b)(10)(A).

   Petitioner is an automobile dealership.  Respondents are or were employed by petitioner as service advisors.  Respondents filed suit alleging that petitioner violated the FLSA by failing to pay them overtime compensation when they worked more than 40 hours in a week.  Petitioner moved to dismiss, arguing that the FLSA overtime provisions do not apply to respondents because service advisors are covered by the §213(b)(10)(A) exemption.  The District Court granted the motion, but the Ninth Circuit reversed in relevant part.  Deferring under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, to the interpretation set forth in the 2011 regulation, the court held that service advisors are not covered by the §213(b)(10)(A) exemption.

*Held*: Section 213(b)(10)(A) must be construed without placing controlling weight on the Department's 2011 regulation.  Pp. 7–12.

   (a) When an agency is authorized by Congress to issue regulations and promulgates a regulation interpreting a statute it enforces, the interpretation receives deference if the statute is ambiguous and the agency's interpretation is reasonable.  See *Chevron, supra,* at 842–844.  When Congress authorizes an agency to proceed through notice-and-comment rulemaking, that procedure is a "very good indicator" that Congress intended the regulation to carry the force of law, so *Chevron* should apply.  *United States* v. *Mead Corp.*, 533 U. S. 218, 229–230.  But *Chevron* deference is not warranted where the regulation is "procedurally defective"—that is, where the agency errs by failing to follow the correct procedures in issuing the regulation.  533 U. S., at 227.

   One basic procedural requirement of administrative rulemaking is that an agency must give adequate reasons for its decisions.  Where the agency has failed to provide even a minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law.  Agencies are free to change their existing policies, but in explaining its changed position, an agency must be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account."  *FCC* v. *Fox Television Stations, Inc.*, 556 U. S. 502, 515.  An "[u]nexplained inconsistency" in agency policy is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice," *National Cable & Telecommunications Assn.* v. *Brand X Internet Services*, 545 U. S. 967, 981, and an arbitrary and capricious regulation of this sort receives no *Chevron* deference.  Pp. 7–10.

   (b) Applying those principles, the 2011 regulation was issued without the reasoned explanation that was required in light of the Department's change in position and the significant reliance interests

Syllabus

involved. The industry had relied since 1978 on the Department's position that service advisors are exempt from the FLSA's overtime pay requirements, and had negotiated and structured compensation plans against this background understanding. In light of this background, the Department needed a more reasoned explanation for its decision to depart from its existing enforcement policy. The Department instead said almost nothing. It did not analyze or explain why the statute should be interpreted to exempt dealership employees who sell vehicles but not dealership employees who sell services. This lack of reasoned explication for a regulation that is inconsistent with the Department's longstanding earlier position results in a rule that cannot carry the force of law, and so the regulation does not receive *Chevron* deference. It is appropriate to remand for the Ninth Circuit to interpret §213(b)(10)(A) in the first instance. Pp. 10–12.

780 F. 3d 1267, vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. GINSBURG, J., filed a concurring opinion, in which SOTOMAYOR, J., joined. THOMAS, J., filed a dissenting opinion, in which ALITO, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 15–415

ENCINO MOTORCARS, LLC, PETITIONER *v.*
HECTOR NAVARRO, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 20, 2016]

JUSTICE KENNEDY delivered the opinion of the Court.

This case addresses whether a federal statute requires payment of increased compensation to certain automobile dealership employees for overtime work. The federal statute in question is the Fair Labor Standards Act (FLSA), 29 U. S. C. §201 *et seq.*, enacted in 1938 to "protect all covered workers from substandard wages and oppressive working hours." *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 739 (1981). Among its other provisions, the FLSA requires employers to pay overtime compensation to covered employees who work more than 40 hours in a given week. The rate of overtime pay must be "not less than one and one-half times the regular rate" of the employee's pay. §207(a).

Five current and former service advisors brought this suit alleging that the automobile dealership where they were employed was required by the FLSA to pay them overtime wages. The dealership contends that the position and duties of a service advisor bring these employees within §213(b)(10)(A), which establishes an exemption from the FLSA overtime provisions for certain employees

engaged in selling or servicing automobiles. The case turns on the interpretation of this exemption.

## I

## A

Automobile dealerships in many communities not only sell vehicles but also sell repair and maintenance services. Among the employees involved in providing repair and maintenance services are service advisors, partsmen, and mechanics. Service advisors interact with customers and sell them services for their vehicles. A service advisor's duties may include meeting customers; listening to their concerns about their cars; suggesting repair and mainte-nance services; selling new accessories or replacement parts; recording service orders; following up with custom-ers as the services are performed (for instance, if new problems are discovered); and explaining the repair and maintenance work when customers return for their vehi-cles. See App. 40–41; see also *Brennan* v. *Deel Motors, Inc.*, 475 F. 2d 1095, 1096 (CA5 1973); 29 CFR §779.372(c)(4) (1971). Partsmen obtain the vehicle parts needed to perform repair and maintenance and provide those parts to the mechanics. See §779.372(c)(2). Me-chanics perform the actual repair and maintenance work. See §779.372(c)(3).

In 1961, Congress enacted a blanket exemption from the FLSA's minimum wage and overtime provisions for all automobile dealership employees. Fair Labor Standards Amendments of 1961, §9, 75 Stat. 73. In 1966, Congress repealed that broad exemption and replaced it with a narrower one. The revised statute did not exempt dealer-ship employees from the minimum wage requirement. It also limited the exemption from the overtime compensa-tion requirement to cover only certain employees—in particular, "any salesman, partsman, or mechanic primar-ily engaged in selling or servicing automobiles, trailers,

trucks, farm implements, or aircraft" at a covered dealership. Fair Labor Standards Amendments of 1966, §209, 80 Stat. 836. Congress authorized the Department of Labor to "promulgate necessary rules, regulations, or orders" with respect to this new provision. §602, *id.*, at 844.

The Department exercised that authority in 1970 and issued a regulation that defined the statutory terms "salesman," "partsman," and "mechanic." 35 Fed. Reg. 5896 (1970) (codified at 29 CFR §779.372(c)). The Department intended its regulation as a mere interpretive rule explaining its own views, rather than a legislative rule with the force and effect of law; and so the Department did not issue the regulation through the notice-and-comment procedures of the Administrative Procedure Act. See 35 Fed. Reg. 5856; see also 5 U. S. C. §553(b)(A) (exempting interpretive rules from notice and comment).

The 1970 interpretive regulation defined "salesman" to mean "an employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the vehicles or farm implements which the establishment is primarily engaged in selling." 29 CFR §779.372(c)(1) (1971). By limiting the statutory term to salesmen who sell vehicles or farm implements, the regulation excluded service advisors from the exemption, since a service advisor sells repair and maintenance services but not the vehicle itself. The regulation made that exclusion explicit in a later subsection: "Employees variously described as service manager, service writer, service advisor, or service salesman . . . are not exempt under [the statute]. This is true despite the fact that such an employee's principal function may be disagnosing [*sic*] the mechanical condition of vehicles brought in for repair, writing up work orders for repairs authorized by the customer, assigning the work to various employees and directing and checking on the work of mechanics."

§779.372(c)(4).

Three years later, the Court of Appeals for the Fifth Circuit rejected the Department's conclusion that service advisors are not covered by the statutory exemption. *Deel Motors*, *supra*. Certain District Courts followed that precedent. See *Yenney* v. *Cass County Motors*, 81 CCH LC ¶33,506 (Neb. 1977); *Brennan* v. *North Bros. Ford, Inc.*, 76 CCH LC ¶33,247 (ED Mich. 1975), aff'd *sub nom. Dunlop* v. *North Bros. Ford, Inc.*, 529 F. 2d 524 (CA6 1976) (table); *Brennan* v. *Import Volkswagen, Inc.*, 81 CCH LC ¶33,522 (Kan. 1975).

In the meantime, Congress amended the statutory provision by enacting its present text, which now sets out the exemption in two subsections. Fair Labor Standards Amendments of 1974, §14, 88 Stat. 65. The first subsection is at issue in this case. It exempts "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements" at a covered dealership. 29 U. S. C. §213(b)(10)(A). The second subsection exempts "any salesman primarily engaged in selling trailers, boats, or aircraft" at a covered dealership. §213(b)(10)(B). The statute thus exempts certain employees engaged in servicing automobiles, trucks, or farm implements, but not similar employees engaged in servicing trailers, boats, or aircraft.

In 1978, the Department issued an opinion letter departing from its previous position. Taking a position consistent with the cases decided by the courts, the opinion letter stated that service advisors could be exempt under §213(b)(10)(A). Dept. of Labor, Wage & Hour Div., Opinion Letter No. 1520 (WH–467) (1978), [1978–1981 Transfer Binder] CCH Wages–Hours Administrative Rulings ¶31,207. The letter acknowledged that the Department's new policy "represent[ed] a change from the position set forth in section 779.372(c)(4)" of its 1970 regulation. In 1987, the Department confirmed its 1978

interpretation by amending its Field Operations Handbook to clarify that service advisors should be treated as exempt under §213(b)(10)(A). It observed that some courts had interpreted the statutory exemption to cover service advisors; and it stated that, as a result of those decisions, it would "no longer deny the [overtime] exemption for such employees." Dept. of Labor, Wage & Hour Div., Field Operations Handbook, Insert No. 1757, 24L04–4(k) (Oct. 20, 1987), online at https://perma.cc/5GHD-KCJJ (all Internet materials as last visited June 16, 2016). The Department again acknowledged that its new position represented a change from its 1970 regulation and stated that the regulation would "be revised as soon as is practicable." *Ibid.*

Twenty-one years later, in 2008, the Department at last issued a notice of proposed rulemaking. 73 Fed. Reg. 43654. The notice observed that every court that had considered the question had held service advisors to be exempt under §213(b)(10)(A), and that the Department itself had treated service advisors as exempt since 1987. *Id.*, at 43658–43659. The Department proposed to revise its regulations to accord with existing practice by interpreting the exemption in §213(b)(10)(A) to cover service advisors.

In 2011, however, the Department changed course yet again. It announced that it was "not proceeding with the proposed rule." 76 Fed. Reg. 18833. Instead, the Department completed its 2008 notice-and-comment rulemaking by issuing a final rule that took the opposite position from the proposed rule. The new final rule followed the original 1970 regulation and interpreted the statutory term "salesman" to mean only an employee who sells automobiles, trucks, or farm implements. *Id.*, at 18859 (codified at 29 CFR §779.372(c)(1)).

The Department gave little explanation for its decision to abandon its decades-old practice of treating service

advisors as exempt under §213(b)(10)(A). It was also less than precise when it issued its final rule. As described above, the 1970 regulation included a separate subsection stating in express terms that service advisors "are not exempt" under the relevant provision. 29 CFR §779.372(c)(4) (1971). In promulgating the 2011 regulation, however, the Department eliminated that separate subsection. According to the United States, this change appears to have been "an inadvertent mistake in drafting." Tr. of Oral Arg. 50.

B

Petitioner is a Mercedes-Benz automobile dealership in the Los Angeles area. Respondents are or were employed by petitioner as service advisors. They assert that petitioner required them to be at work from 7 a.m. to 6 p.m. at least five days per week, and to be available for work matters during breaks and while on vacation. App. 39–40. Respondents were not paid a fixed salary or an hourly wage for their work; instead, they were paid commissions on the services they sold. *Id.*, at 40–41.

Respondents sued petitioner in the United States District Court for the Central District of California, alleging that petitioner violated the FLSA by failing to pay them overtime compensation when they worked more than 40 hours in a week. *Id.*, at 42–44. Petitioner moved to dismiss, arguing that the FLSA overtime provisions do not apply to respondents because service advisors are covered by the statutory exemption in §213(b)(10)(A). The District Court agreed and granted the motion to dismiss.

The Court of Appeals for the Ninth Circuit reversed in relevant part. It construed the statute by deferring under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984), to the interpretation set forth by the Department in its 2011 regulation. Applying that deference, the Court of Appeals held that service

advisors are not covered by the §213(b)(10)(A) exemption. 780 F. 3d 1267 (2015). The Court of Appeals recognized, however, that its decision conflicted with cases from a number of other courts. *Id.,* at 1274 (citing, *inter alia*, *Walton* v. *Greenbrier Ford, Inc.*, 370 F. 3d 446 (CA4 2004); *Deel Motors*, 475 F. 2d 1095; *Thompson* v. *J. C. Billion, Inc.*, 368 Mont. 299, 294 P. 3d 397 (2013)). This Court granted certiorari to resolve the question. 577 U. S. \_\_\_ (2016).

## II
### A

The full text of the statutory subsection at issue states that the overtime provisions of the FLSA shall not apply to:

> "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." §213(b)(10)(A).

The question presented is whether this exemption should be interpreted to include service advisors. To resolve that question, it is necessary to determine what deference, if any, the courts must give to the Department's 2011 interpretation.

In the usual course, when an agency is authorized by Congress to issue regulations and promulgates a regulation interpreting a statute it enforces, the interpretation receives deference if the statute is ambiguous and if the agency's interpretation is reasonable. This principle is implemented by the two-step analysis set forth in *Chevron*. At the first step, a court must determine whether Congress has "directly spoken to the precise question at issue." 467 U. S*.,* at 842. If so, "that is the end of the

matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.,* at 842–843. If not, then at the second step the court must defer to the agency's interpretation if it is "reasonable." *Id.,* at 844.

A premise of *Chevron* is that when Congress grants an agency the authority to administer a statute by issuing regulations with the force of law, it presumes the agency will use that authority to resolve ambiguities in the statutory scheme. See *id.*, at 843–844; *United States* v. *Mead Corp.*, 533 U. S. 218, 229–230 (2001). When Congress authorizes an agency to proceed through notice-and-comment rulemaking, that "relatively formal administrative procedure" is a "very good indicator" that Congress intended the regulation to carry the force of law, so *Chevron* should apply. *Mead Corp., supra*, at 229–230. But *Chevron* deference is not warranted where the regulation is "procedurally defective"—that is, where the agency errs by failing to follow the correct procedures in issuing the regulation. 533 U. S., at 227; cf. *Long Island Care at Home, Ltd.* v. *Coke*, 551 U. S. 158, 174–176 (2007) (rejecting challenge to procedures by which regulation was issued and affording *Chevron* deference). Of course, a party might be foreclosed in some instances from challenging the procedures used to promulgate a given rule. Cf., *e.g., JEM Broadcasting Co.* v. *FCC*, 22 F. 3d 320, 324–326 (CADC 1994); cf. also *Auer* v. *Robbins*, 519 U. S. 452, 458–459 (1997) (party cannot challenge agency's failure to amend its rule in light of changed circumstances without first seeking relief from the agency). But where a proper challenge is raised to the agency procedures, and those procedures are defective, a court should not accord *Chevron* deference to the agency interpretation. Respondents do not contest the manner in which petitioner has challenged the agency procedures here, and so this opinion assumes without deciding that the challenge was proper.

One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions. The agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43 (1983) (internal quotation marks omitted). That requirement is satisfied when the agency's explanation is clear enough that its "path may reasonably be discerned." *Bowman Transp., Inc.* v. *Arkansas-Best Freight System, Inc.*, 419 U. S. 281, 286 (1974). But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law. See 5 U. S. C. §706(2)(A); *State Farm*, *supra*, at 42–43.

Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change. See, *e.g., National Cable & Telecommunications Assn.* v. *Brand X Internet Services*, 545 U. S. 967, 981–982 (2005); *Chevron*, 467 U. S., at 863–864. When an agency changes its existing position, it "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." *FCC* v. *Fox Television Stations, Inc.*, 556 U. S. 502, 515 (2009). But the agency must at least "display awareness that it is changing position" and "show that there are good reasons for the new policy." *Ibid.* (emphasis deleted). In explaining its changed position, an agency must also be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account." *Ibid.*; see also *Smiley* v. *Citibank (South Dakota), N. A.*, 517 U. S. 735, 742 (1996). "In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered

by the prior policy." *Fox Television Stations*, *supra*, at 515–516. It follows that an "[u]nexplained inconsistency" in agency policy is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Brand X*, *supra*, at 981. An arbitrary and capricious regulation of this sort is itself unlawful and receives no *Chevron* deference. See *Mead Corp.*, *supra*, at 227.

B

Applying those principles here, the unavoidable conclusion is that the 2011 regulation was issued without the reasoned explanation that was required in light of the Department's change in position and the significant reliance interests involved. In promulgating the 2011 regulation, the Department offered barely any explanation. A summary discussion may suffice in other circumstances, but here—in particular because of decades of industry reliance on the Department's prior policy—the explanation fell short of the agency's duty to explain why it deemed it necessary to overrule its previous position.

The retail automobile and truck dealership industry had relied since 1978 on the Department's position that service advisors are exempt from the FLSA's overtime pay requirements. See National Automobile Dealers Association, Comment Letter on Proposed Rule Updating Regulations Issued Under the Fair Labor Standards Act (Sept. 26, 2008), online at https://www.regulations.gov/#!documentDetail;D=WHD-2008-0003-0038. Dealerships and service advisors negotiated and structured their compensation plans against this background understanding. Requiring dealerships to adapt to the Department's new position could necessitate systemic, significant changes to the dealerships' compensation arrangements. See Brief for National Automobile Dealers Association et al. as *Amici Curiae* 13–14. Dealerships whose service advisors

are not compensated in accordance with the Department's new views could also face substantial FLSA liability, see 29 U. S. C. §216(b), even if this risk of liability may be diminished in some cases by the existence of a separate FLSA exemption for certain employees paid on a commission basis, see §207(i), and even if a dealership could defend against retroactive liability by showing it relied in good faith on the prior agency position, see §259(a). In light of this background, the Department needed a more reasoned explanation for its decision to depart from its existing enforcement policy.

The Department said that, in reaching its decision, it had "carefully considered all of the comments, analyses, and arguments made for and against the proposed changes." 76 Fed. Reg. 18832. And it noted that, since 1978, it had treated service advisors as exempt in certain circumstances. *Id.*, at 18838. It also noted the comment from the National Automobile Dealers Association stating that the industry had relied on that interpretation. *Ibid.*

But when it came to explaining the "good reasons for the new policy," *Fox Television Stations*, *supra*, at 515, the Department said almost nothing. It stated only that it would not treat service advisors as exempt because "the statute does not include such positions and the Department recognizes that there are circumstances under which the requirements for the exemption would not be met." 76 Fed. Reg. 18838. It continued that it "believes that this interpretation is reasonable" and "sets forth the appropriate approach." *Ibid.* Although an agency may justify its policy choice by explaining why that policy "is more consistent with statutory language" than alternative policies, *Long Island Care at Home*, 551 U. S., at 175 (internal quotation marks omitted), the Department did not analyze or explain why the statute should be interpreted to exempt dealership employees who sell vehicles but not dealership employees who sell services (that is, service advisors).

And though several public comments supported the Department's reading of the statute, the Department did not explain what (if anything) it found persuasive in those comments beyond the few statements above.

It is not the role of the courts to speculate on reasons that might have supported an agency's decision. "[W]e may not supply a reasoned basis for the agency's action that the agency itself has not given." *State Farm*, 463 U. S., at 43 (citing *SEC* v. *Chenery Corp.*, 332 U. S. 194, 196 (1947)). Whatever potential reasons the Department might have given, the agency in fact gave almost no reasons at all. In light of the serious reliance interests at stake, the Department's conclusory statements do not suffice to explain its decision. See *Fox Television Stations*, 556 U. S., at 515–516. This lack of reasoned explication for a regulation that is inconsistent with the Department's longstanding earlier position results in a rule that cannot carry the force of law. See 5 U. S. C. §706(2)(A); *State Farm*, *supra*, at 42–43. It follows that this regulation does not receive *Chevron* deference in the interpretation of the relevant statute.

\* \* \*

For the reasons above, §213(b)(10)(A) must be construed without placing controlling weight on the Department's 2011 regulation. Because the decision below relied on *Chevron* deference to this regulation, it is appropriate to remand for the Court of Appeals to interpret the statute in the first instance. Cf. *Mead*, 533 U. S., at 238–239. The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 15–415

———————

## ENCINO MOTORCARS, LLC, PETITIONER *v.* HECTOR NAVARRO, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 20, 2016]

JUSTICE GINSBURG, with whom JUSTICE SOTOMAYOR joins, concurring.

I agree in full that, in issuing its 2011 rule, the Department of Labor did not satisfy its basic obligation to explain "that there are good reasons for [a] new policy." *FCC* v. *Fox Television Stations, Inc.*, 556 U. S. 502, 515 (2009). The Department may have adequate reasons to construe the Fair Labor Standards Act automobile-dealership exemption as it did. The 2011 rulemaking tells us precious little, however, about what those reasons are.[1]

———————

[1] Unlike JUSTICE THOMAS, I am not persuaded that, sans *Chevron*, the Ninth Circuit should conclude on remand that service advisors are categorically exempt from hours regulations. As that court previously explained, "[s]ervice advisors may be 'salesmen' in a generic sense, but they [may fall outside the exemption because they] do not personally sell cars and they do not personally service cars." 780 F. 3d 1267, 1274 (2015). Moreover, in its briefing before this Court, the Department of Labor responded to the argument that "the exemption's application to a 'partsman'" "confirm[s] that a service advisor is a salesman primarily engaged in servicing automobiles." *Post,* at 3–4 (THOMAS, J, dissenting). See Brief for United States as *Amicus Curiae* 22–23 (maintaining that partsmen, unlike service advisors, actually engage in maintenance and repair work); Brief for Respondents 11 (contending that partsmen "ge[t] their hands dirty" by "work[ing] as a mechanic's right-hand man or woman"); *id.,* at 32–35 (cataloguing descriptions of partsmen responsibilities drawn from occupational handbooks and training manuals). The Court appropriately leaves the proper ranking of service advisors

I write separately to stress that nothing in today's opinion disturbs well-established law. In particular, where an agency has departed from a prior position, there is no "heightened standard" of arbitrary-and-capricious review. *Id.,* at 514. See also *ante,* at 9. An agency must "display awareness that it is changing position" and "show that there are good reasons for the new policy." *Fox*, 556 U. S., at 515 (emphasis deleted). "But it need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Ibid.*

The Court's bottom line remains unaltered: "'[U]nexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" *Ante*, at 10 (quoting *National Cable & Telecommunications Assn.* v. *Brand X Internet Services*, 545 U. S. 967, 981 (2005)). Industry reliance may spotlight the inadequacy of an agency's explanation. See *ante*, at 10 ("decades of industry reliance" make "summary discussion" inappropriate). But reliance does not overwhelm good reasons for a policy change. Even if the Department's changed position would "necessitate systemic, significant changes to the dealerships' compensation arrangements," *ante,* at 10, the Department would not be disarmed from determining that the benefits of overtime coverage outweigh those costs.[2]

———————

to the Court of Appeals in the first instance.

[2] If the Department decides to reissue the 2011 rule, I doubt that reliance interests would pose an insurmountable obstacle. As the Court acknowledges, *ante,* at 11, an affirmative defense in the Fair Labor Standards Act (FLSA) protects regulated parties against retroactive liability for actions taken in good-faith reliance on superseded agency guidance, 29 U. S. C. §259(a). And a separate FLSA exemption covers

"If the action rests upon . . . an exercise of judgment in an area which Congress has entrusted to the agency[,] of course it must not be set aside because the reviewing court might have made a different determination were it empowered to do so." *SEC* v. *Chenery Corp.*, 318 U. S. 80, 94 (1943).

––––––––––

many service advisors: retail or service workers who receive at least half of their pay on commission, so long as their regular rate of pay is more than 1½ times the minimum wage. *Ante,* at 11 (citing §207(i)); see Brief for Petitioner 13, n. 4 (many service advisors are paid on a commission basis). Thus, the cost of the Department's policy shift may be considerably less than the dealerships project. Finally, I note, the extent to which the Department is obliged to address reliance will be affected by the thoroughness of public comments it receives on the issue. In response to its 2008 proposal, the Department received only conclusory references to industry reliance interests. See *ante,* at 10 (citing comment from National Automobile Dealers Association). An agency cannot be faulted for failing to discuss at length matters only cursorily raised before it.

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–415

_____

## ENCINO MOTORCARS, LLC, PETITIONER *v.* HECTOR NAVARRO, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 20, 2016]

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting.

The Court granted this case to decide whether an exemption under the Fair Labor Standards Act (FLSA), 29 U. S. C. §201 *et seq.*, "requires payment of increased compensation to certain automobile dealership employees"—known as service advisors—"for overtime work." *Ante*, at 1; see also *ante,* at 2, 7. The majority declines to resolve that question. Instead, after explaining why the Court owes no deference to the Department of Labor's regulation purporting to interpret this provision, see *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843 (1984), the majority leaves it "for the Court of Appeals to interpret the statute in the first instance." *Ante,* at 12.

I agree with the majority's conclusion that we owe no *Chevron* deference to the Department's position because "deference is not warranted where [a] regulation is 'procedurally defective.'" *Ante,* at 8. But I disagree with its ultimate decision to punt on the issue before it. We have an "obligation . . . to decide the merits of the question presented." *CBOCS West, Inc.* v. *Humphries*, 553 U. S. 442, 472 (2008) (THOMAS, J., dissenting). We need not wade into the murky waters of *Chevron* deference to decide whether the Ninth Circuit's reading of the statute

was correct. We must instead examine the statutory text. That text reveals that service advisors are salesmen primarily engaged in the selling of services for automobiles. Accordingly, I would reverse the Ninth Circuit's judgment.

Federal law requires overtime pay for certain employees who work more than 40 hours per week. §207(a)(2)(C). But the FLSA exempts various categories of employees from this overtime requirement. §213. The question before the Court is whether the following exemption encompasses service advisors:

> "The provisions of section 207 of this title shall not apply with respect to—
>
> .        .        .        .        .
>
> "(10)(A) any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." §213(b).

I start with the uncontroversial notion that a service advisor is a "salesman." The FLSA does not define the term "salesman," so "we give the term its ordinary meaning." *Taniguchi* v. *Kan Pacific Saipan, Ltd.*, 566 U. S. ___, ___ (2012) (slip op., at 5). A "salesman" is someone who sells goods or services. 14 Oxford English Dictionary 391 (2d ed. 1989) ("[a] man whose business it is to sell goods or conduct sales"); Random House Dictionary of the English Language 1262 (1966) (Random House) ("a man who sells goods, services, etc."). Service advisors, whose role it is to "interact with customers and sell them services for their vehicles," *ante,* at 2, are plainly "salesm[e]n." See *ibid.* (cataloguing sales-related duties of service advisors).

A service advisor, however, is not "primarily engaged in selling . . . automobiles." §213(b)(10)(A). On the contrary,

a service advisor is a "salesman" who sells servicing solutions. *Ante,* at 2. So the exemption applies only if it covers *not only* those salesmen primarily engaged in selling automobiles *but also* those salesmen primarily engaged in servicing automobiles.

The exemption's structure confirms that salesmen could do both. The exemption contains three nouns ("salesman, partsman, or mechanic") and two gerunds ("selling or servicing"). The three nouns are connected by the disjunctive "or," as are the gerunds. So unless context dictates otherwise, a salesman can *either* be engaged in selling *or* servicing automobiles. Cf. *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 339 (1979).

Context does not dictate otherwise. A salesman, namely, one who sells servicing solutions, can be "primarily engaged in . . . servicing automobiles." §213(b)(10)(A). The FLSA does not define the term "servicing," but its ordinary meaning includes both "[t]he action of maintaining or repairing a motor vehicle" and "the action of providing a service." 15 Oxford English Dictionary 39; see also Random House 1304 (defining "service" to mean "the providing . . . of . . . activities required by the public, as maintenance, repair, etc."). A service advisor's selling of service solutions fits both definitions. The service advisor is the customer's liaison for purposes of deciding what parts are necessary to maintain or repair a vehicle, and therefore is primarily engaged in "the action of maintaining or repairing a motor vehicle" or "the action of providing a service" for an automobile.

Other features of the exemption confirm that a service advisor is a salesman primarily engaged in servicing automobiles. Consider the exemption's application to a "partsman." Like a service advisor, a partsman neither sells vehicles nor repairs vehicles himself. See 29 CFR §779.372(c)(2) (2015) (defining "partsman" as "any employee employed for the purpose of and primarily engaged

in requisitioning, stocking, and dispensing parts"). For the provision to exempt partsmen, then, the phrase "primarily engaged in . . . servicing" must cover some employees who do not themselves perform repair or maintenance. So "servicing" refers not only to the physical act of repairing or maintaining a vehicle but also to acts integral to the servicing process more generally.

Respondents' contrary contentions are unavailing. They first invoke the distributive canon: "Where a sentence contains several antecedents and several consequents," the distributive canon instructs courts to "read [those several terms] distributively and apply the words to the subjects which, by context, they seem most properly to relate." 2A N. Singer & S. Singer, Sutherland on Statutory Construction §47.26, on p. 448 (rev. 7th ed. 2014). Respondents accordingly maintain that 29 U. S. C. §213(b)(10)(A) exempts *only* salesmen primarily engaged in selling automobiles. Brief for Respondents 20–26. But the distributive canon is less helpful in cases such as this because the antecedents and consequents cannot be readily matched on a one-to-one basis. Here, there are three nouns to be matched with only two gerunds, so the canon does not overcome the exemption's plain meaning. Perhaps respondents might have a better argument if the statute exempted "salesman or mechanics who primarily engage in selling or servicing automobiles." In such a case, one might assume that Congress meant the nouns and gerunds to match on a one-to-one basis, and the distributive canon could be utilized to determine how the matching should occur. But that is not the statute before us. For the reasons explained, *supra,* at 3–4, the plain meaning of the various terms in the exemption establish that the term "salesman" is not limited to only those who sell automobiles. It also extends to those "primarily engaged in . . . servicing automobiles." §213(b)(10)(A).

Respondents also resist this natural reading of the

exemption by invoking the made-up canon that courts must narrowly construe the FLSA exemptions. Brief for Respondents 41–42. The Ninth Circuit agreed with respondents on this score. 780 F. 3d 1267, 1271–1272, n. 3 (2015). The court should not do so again on remand. We have declined to apply that canon on two recent occasions, one of which also required the Court to parse the meaning of an exemption in §213. *Christopher* v. *SmithKline Beecham Corp.*, 567 U. S. \_\_\_, \_\_\_–\_\_\_, n. 21 (2012) (slip op., at 19–20, n. 21); see also *Sandifer* v. *United States Steel Corp.*, 571 U. S. \_\_\_, \_\_\_, n. 7 (2014) (slip op., at 11, n. 7). There is no basis to infer that Congress means anything beyond what a statute plainly says simply because the legislation in question could be classified as "remedial." See Scalia, Assorted Canards of Contemporary Legal Analysis, 40 Case W. Res. L. Rev. 581, 581–586 (1990). Indeed, this canon appears to "res[t] on an elemental misunderstanding of the legislative process," viz., "that Congress intend[s] statutes to extend as far as possible in service of a singular objective." Brief for Chamber of Commerce of the United States of America et al. as *Amici Curiae* 7.

\*　　\*　　\*

For the foregoing reasons, I would hold that the FLSA exemption set out in §213(b)(10)(A) covers the service advisors in this case. Service advisors are "primarily engaged in . . . servicing automobiles," given their integral role in selling and providing vehicle services. Accordingly, I would reverse the judgment of the Ninth Circuit.