**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| OREGON NATURAL DESERT ASSOCIATION, *Plaintiff-Appellant/ Cross-Appellee*, | Nos. 18-35258 18-35282 |
| v. | D.C. No. 3:09-cv-00369-PK |
| JEFF ROSE, Burns District Manager, BLM; U.S. BUREAU OF LAND MANAGEMENT; INTERIOR BOARD OF LAND APPEALS; RHONDA KARGES, Field Manager, Andrews Resource Area, BLM, *Defendants-Appellees*, | OPINION |
| and | |
| HARNEY COUNTY, *Intervenor-Defendant-Appellee/ Cross-Appellant*. | |

Appeals from the United States District Court
for the District of Oregon
Paul J. Papak II, Magistrate Judge, Presiding

Argued and Submitted March 8, 2019
Portland, Oregon

Filed April 25, 2019

Before:  Susan P. Graber and Marsha S. Berzon, Circuit
Judges, and Eduardo C. Robreno,[*] District Judge.

Opinion by Judge Graber

## SUMMARY[**]

### Environmental Law

The panel affirmed in part, and vacated in part, the district
court's judgment upholding the Bureau of Land
Management's decisions about the route network for
motorized vehicles in the Steens Mountain Cooperative
Management and Protection Area.

The Bureau issued two plans: the Steens Mountain Travel
Management Plan ("Travel Plan") and the Steens Mountain
Comprehensive Recreation Plan ("Recreation Plan").  The
Oregon Natural Desert Association challenged the Recreation
Plan, and the Interior Board of Land Appeals ("Board")
approval of the Travel Plan, under the National
Environmental Policy Act of 1969 ("NEPA"), the Federal
Land Policy Management Act of 1976, and the Steens

---

[*] The Honorable Eduardo C. Robreno, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

Mountain Cooperative Management and Protection Act of 2000. Haney County, Oregon intervened.

The panel held that the Bureau satisfied its obligation to consult the Steens Mountain Advisory Council before issuing the Recreation Plan, and therefore, its action was not arbitrary and capricious in that respect. The panel also held that even if the degree or mode of consultation was insufficient, any error was harmless to Harney County.

The panel held that the Board acted arbitrarily and capriciously by changing its definition of "roads and trials" without providing a reasoned explanation for the change. The panel vacated the Board's approval of the Travel Plan, and remanded. The panel left it to the agency, in the first instance, to explain its change in position or to craft new definitions and explain them.

The panel held that the Board acted arbitrarily and capriciously by affirming the Bureau's issuance of the Travel Plan because the Bureau failed to establish the baseline environmental conditions necessary for a procedurally adequate assessment of the Travel Plan's environmental impacts. The panel vacated the Board's approval of the Travel Plan and remanded with instructions for the Board to remand the Travel Plan to the Bureau for reconsideration. Because the panel concluded that the Travel Plan was procedurally deficient under NEPA, it did not reach the substantive challenges to the Travel Plan under the other Acts and did not decide whether the Bureau must prepare an environmental impact statement for the Travel Plan.

The panel held that the Bureau acted arbitrarily and capriciously in issuing the Recreation Plan because the

Bureau failed to establish the baseline conditions necessary for it to consider the significant environmental impacts to the Steens Mountain Area. The panel vacated the Recreation Plan and remanded.

The panel vacated the cost award to the Bureau.

## COUNSEL

Peter M. Lacy (argued), Oregon Natural Desert Association, Portland, Oregon; Thomas C. Buchele, Earthrise Law Center, Portland, Oregon; David H. Becker, Law Office of David H. Becker, Portland, Oregon; for Plaintiff-Appellant/Cross-Appellee.

Dominic M. Carollo (argued), Yockim Carollo LLP, Roseburg, Oregon, for Intervenor-Defendant-Appellee/Cross-Appellant.

Sean E. Martin (argued), Assistant United States Attorney; Kelly A. Zusman, Appellate Chief; Billy J. Williams, United States Attorney; United States Attorney's Office, Portland, Oregon; for Defendants-Appellees.

**OPINION**

GRABER, Circuit Judge:

This litigation arose from the Bureau of Land Management's decisions about the route network for motorized vehicles in the Steens Mountain Cooperative Management and Protection Area ("Steens Mountain Area"). The Bureau issued two plans: the Steens Mountain Travel Management Plan ("Travel Plan") and the Steens Mountain Comprehensive Recreation Plan ("Recreation Plan"). Plaintiff Oregon Natural Desert Association ("ONDA") challenged the Recreation Plan, and the Interior Board of Land Appeals' ("Board") approval of the Travel Plan, under the National Environmental Policy Act of 1969 ("NEPA"), the Federal Land Policy Management Act of 1976 ("FLPMA"), and the Steens Mountain Cooperative Management and Protection Act of 2000 ("Steens Act"). Harney County intervened to defend the Board's approval of the Travel Plan, but also cross-claimed against the Bureau to challenge the Recreation Plan as arbitrary and capricious. The district court upheld both agency actions. Reviewing de novo, *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 991 (9th Cir. 2014), we affirm in part, vacate in part, and remand.

A. *Consultation with the Advisory Council*

The Bureau satisfied its obligation to consult the Steens Mountain Advisory Council before issuing the Recreation Plan, so its action was not arbitrary and capricious in that respect. 5 U.S.C. § 706(2)(A). Although the Bureau must make any decision "to permanently close an existing road" or "restrict the access of motorized or mechanized vehicles on

certain roads" in the Steens Mountain Area "in consultation with the advisory council," 16 U.S.C. § 460nnn-22(c), the Steens Act does not specify *how* the Bureau must consult with the Advisory Council. The Advisory Council has no power to make management decisions for the Steens Mountain Area or to veto the Bureau's management decisions. *See id.* § 460nnn-51(a) (establishing the Advisory Council solely "to advise" the Secretary of the Interior in managing the Steens Mountain Area).

Here, the Bureau opened the public comment period for the revised Recreation Plan Environmental Assessment ("EA") on January 12, 2015. The Bureau formally briefed the Advisory Council on the Recreation Plan about two weeks later, during meetings in which the Bureau gave Advisory Council members copies of each route analysis and discussed the project. At the end of the meetings, the Advisory Council suggested that the Bureau should "use the information" from the meetings and act as it saw fit. In short, the Bureau adequately consulted the Advisory Council.

Even if the degree or mode of consultation were insufficient, any error was harmless to the County. The County responded to the revised EA months before the Bureau issued the final Recreation Plan decision and Finding of No Significant Impact ("FONSI") in April 2015. The County cannot explain how the Bureau's purported failure to consult the Advisory Council more extensively "caused the agency not to be fully aware of the environmental consequences of the proposed action, thereby precluding informed decisionmaking and public participation, or otherwise materially affected the substance of the agency's decision." *Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095, 1104 (9th Cir. 2016).

B.  *Definition of "Roads and Trails"*

The Board acted arbitrarily and capriciously by changing its definition of "roads and trails" without providing a reasoned explanation for the change. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125–26 (2016).  The Steens Act prohibits the use of motorized vehicles "off road," but also authorizes the use of motorized vehicles on "roads and trails," without defining those terms. 16 U.S.C. § 460nnn-22(b)(1).  The Board reconciled this seeming contradiction "by concluding that since the statute clearly meant to allow [the Bureau] to designate roads and trails as open to motorized travel, the prohibition against motorized off-road travel logically can only mean that motorized travel that *does not occur on either a road or a trail* is prohibited."[1]  Although the Steens Act does not use the term "route," the Board used that more generic term throughout its decisions to encompass "roads and trails."

In its 2009 decision on the Travel Plan, the Board decided that there exists "inherent incongruity in determining that routes are 'obscure,' or difficult or impossible to identify on the ground, and concluding that opening them to motorized use is consistent with the Steens Act."  In other words, the Board determined that a route that is "difficult or impossible to identify on the ground" is neither a road nor a trail under the Steens Act.  The Board thus reversed the Bureau's decision to allow motorized travel on 36 miles of Obscure Routes.

But in its 2014 remand decision on the Travel Plan, the Board reversed course and sua sponte overturned its own

---

[1] ONDA agrees with this interpretation.

decision to close the Obscure Routes. For the first time, the Board defined "route" to mean something that "existed as a matter of record" in October 2000—when Congress enacted the Steens Act[2]—"and that might again be used in the future, despite a present difficulty in physically tracing [it] on the ground." The "record" to which the Board referred included sources such as hand-drawn maps and testimony from local ranchers and grazing permittees, whether those maps or testimony existed in 2000 or only later.

Of course, agencies may change their policies over time. But an agency must "at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Encino Motorcars*, 136 S. Ct. at 2126 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). The Board failed to do that. The Board did not explain, for example, what led it to alter its earlier decision or why the new approach was more consistent with the text of the Steens Act. It also did not explain why it could rely on a "record" that was created after the effective dates of both the Steens Act and the FLPMA and that consisted largely of representations made by interested local parties. *See id.* at 2127 (discussing how the agency might have justified its choice). Because the Board acted arbitrarily and capriciously, we vacate its approval of the Travel Plan and remand.

Because the Steens Act leaves room for agency discretion in this area, such that the Board or the Bureau could redefine "road" or "trail" on remand even if we endeavored to define those terms first, *Nat'l Cable & Telecomms. Ass'n v. Brand*

---

[2] Or, for routes within the Steens Mountain Wilderness, that existed as a matter of record in October 1976, when Congress enacted the FLPMA.

*X Internet Servs.*, 545 U.S. 967, 982 (2005), we do not define the terms here.**[3]** We leave it to the agency, in the first instance, to explain its change in position or to craft new definitions and explain them.

## C. *The Travel Plan*

The Board also acted arbitrarily and capriciously by affirming the Bureau's issuance of the Travel Plan. Even assuming that the Bureau properly inventoried all "roads and trails" in the Steens Mountain Area, the Bureau failed to establish the baseline environmental conditions necessary for a procedurally adequate assessment of the Travel Plan's environmental impacts. "Without establishing the baseline conditions" before a project begins, "there is simply no way to determine what effect the project will have on the environment and, consequently, no way to comply with NEPA." *Great Basin Res. Watch v. BLM*, 844 F.3d 1095, 1101 (9th Cir. 2016) (brackets omitted) (quoting *Half Moon Bay Fishermans' Mktg. Ass'n v. Carlucci*, 857 F.2d 505, 510 (9th Cir. 1988)).

Nothing in the Travel Plan EA establishes the physical condition of the routes, such as whether they are overgrown with vegetation or have become impassable in certain spots. Indeed, the Bureau acknowledged that it included some routes in the inventory even though its staff could not find those routes on the ground. Despite that lack of information, the Travel Plan EA authorized most routes for "Level 2"

---

**[3]** We note, however, that the Bureau referred to the routes in the Travel Plan and the Recreation Plan as both "routes" and "roads." On remand, it would be prudent for the Bureau to clarify whether all the routes are roads, or whether some routes are trails.

maintenance, which involves mechanically grading a route and "brushing" (removing) roadside vegetation. Such "routine" maintenance can dramatically change a lightly used route and its surroundings. Thus, without understanding the actual condition of the routes on the ground, the Bureau could not properly assess the environmental impact of allowing motorized travel on more than 500 miles of routes, or of carrying out mechanical maintenance on those routes. The Bureau "had a duty to assess, in some reasonable way, the actual baseline conditions" in the Steens Mountain Area, *Or. Nat. Desert Ass'n v. Jewell*, 840 F.3d 562, 569 (9th Cir. 2016), but it failed to perform that duty.

NEPA does not require the Bureau to accept ONDA's assessment of the environmental consequences of the Travel Plan. It does, however, require the Bureau to "articulate[] a rational connection between the facts found and the choice made," instead of relying on an ipse dixit assessment of environmental impacts over a contrary expert opinion and data. *Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*, 693 F.3d 1084, 1091 (9th Cir. 2012) (internal quotation marks omitted). Ordinarily, we must defer to an agency's technical expertise and reasonable choice of methodology, because NEPA "does not require adherence to a particular analytic protocol." *Or. Nat. Desert Ass'n v. BLM* ("*ONDA v. BLM*"), 625 F.3d 1092, 1121 (9th Cir. 2010) (quoting *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1188 (9th Cir. 1997)). And an agency need not measure "actual baseline conditions in every situation—it may estimate baseline conditions using data from a similar area, computer modeling, or some other reasonable method." *Great Basin*, 844 F.3d at 1101. But here, the Bureau did not use *any* method or estimate—aside from making generic statements about roads in the Steens Mountain Area—to

establish baseline conditions. We "cannot defer to a void." *ONDA v. BLM*, 625 F.3d at 1121.

The EA itself "contains virtually no references to any material in support of or in opposition to its conclusions," even though the EA "is where the [Bureau's] defense of its position must be found."**[4]** *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1214 (9th Cir. 1998) (citing 40 C.F.R. § 1508.9(a)). The EA and the previous Environmental Impact Statement ("EIS") to which it is tiered contain only a cursory analysis of the project's impact on noteworthy aspects of the Steens Mountain Area, such as the sage grouse population and the spread of noxious weed infestations. We have warned that "general statements about 'possible' effects and 'some risk' do not constitute a 'hard look' absent a justification" for why an agency could not supply more "definitive information." *Id.* at 1213 (internal quotation marks omitted). The EA and the EIS lack any such justification. Accordingly, we vacate the Board's approval of the Travel Plan, and remand with instructions for the Board to remand the Travel Plan to the Bureau for reconsideration.

Because we conclude that the Travel Plan is procedurally deficient under NEPA, we do not reach ONDA's substantive challenges to the Travel Plan under the Steens Act and the

---

**[4]** To the extent that the Board relied on "Route Analysis Forms" that the Bureau submitted on remand, that reliance was arbitrary and capricious. Whatever the forms' contents, the Bureau created them years *after* it released the Travel Plan EA and FONSI in 2007. Thus, the public never saw the forms and never had an opportunity to comment on them, "frustrating NEPA's goal of allowing the public the opportunity to play a role in the decisionmaking process." *Great Basin*, 844 F.3d at 1104 (internal quotation marks and alteration omitted).

FLPMA. Likewise, we do not decide whether the Bureau must prepare an EIS for the Travel Plan.[5]

> Having addressed the problems we have identified, the [Bureau] may decide to make different choices. NEPA is not a paper exercise, and new analyses may point in new directions. As a result, although ONDA also raises concerns regarding alleged substantive and procedural flaws within the Plan, we do not reach those issues today. The problems it identifies may never arise once the [Bureau] has had a chance to see the choices before it with fresh eyes.

*ONDA v. BLM*, 625 F.3d at 1124.

### D. *Recreation Plan*

The Bureau acted arbitrarily and capriciously in issuing the Recreation Plan. Here, too, the Bureau failed to establish

---

[5] That said, we disagree with the Bureau and the County that an EIS is unnecessary because the Travel Plan simply maintained the "status quo." Not so. The Travel Plan added about 70 miles of motorized routes to the transportation network in the Steens Mountain Area and closed 1.23 miles of routes to motorized access. By contrast, "status quo" cases involve the "mere continued operation of a facility." *See Burbank Anti-Noise Grp. v. Goldschmidt*, 623 F.2d 115, 116 (9th Cir. 1980) (per curiam) (holding that the FAA did not need to prepare an EIS before providing financial assistance that would allow an entity to purchase and continue operating an existing airport); *see also Upper Snake River Chapter of Trout Unlimited v. Hodel*, 921 F.2d 232, 235 (9th Cir. 1990) (holding that the Bureau of Reclamation did not need to prepare an EIS before adjusting the flow of water from a dam, because the agency had been occasionally adjusting the water flow "for upwards of ten years").

the baseline conditions necessary for it to "carefully consider information about significant environmental impacts" to the Steens Mountain Area. *N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1085 (9th Cir. 2011).

This time around, the Bureau made Route Analysis Forms and aerial photographs available during the comment period. But neither the photographs nor the forms themselves reveal any details about the condition of the Obscure Routes. Each form starts with the following prompt: "Please describe the general setting of the area including precipitation and vegetation and compare this data to an average precipitation year. Provide any other pertinent information." Yet, even though the Bureau seemingly recognized the importance of establishing baseline conditions (such as the vegetation on each route), the completed forms fail to provide any details responsive to the prompt. Without establishing baseline conditions for the Obscure Routes, the Bureau could not have analyzed the environmental impacts of the Recreation Plan properly. *Great Basin*, 844 F.3d at 1101.

At some point *after* the public comment period closed, the Bureau attached ground photographs for a few Obscure Routes to the forms; the photographs show details about vegetation and the condition of the routes themselves. Such late analysis, "conducted without any input from the public," impedes NEPA's goal of giving the public a role to play in the decisionmaking process and so "cannot cure deficiencies" in an EA. *Id.* at 1104. And, because the Bureau added the Obscure Routes back to the Steens Mountain transportation network only over the 2014–15 winter, while the Steens Mountain was largely inaccessible, ONDA did not have a chance to survey the Obscure Routes and respond to the photographs. Thus, the Bureau's failure to make the

photographs available during the public comment period "'caused the agency not to be fully aware of the environmental consequences of the proposed action, thereby precluding informed decisionmaking and public participation." *Idaho Wool Growers*, 816 F.3d at 1104. Accordingly, we vacate the Recreation Plan and remand.

For the reasons explained above, we do not reach ONDA's substantive challenges to the Recreation Plan and we do not decide whether the Bureau should have prepared an EIS for the Recreation Plan. *ONDA v. BLM*, 625 F.3d at 1124.

E. *Costs*

Because we vacate and remand as to ONDA's NEPA claims, we also vacate the $4,937.99 cost award to the Bureau. Fed. R. Civ. P. 54(d)(1).

**AFFIRMED in part, VACATED in part, and REMANDED**. The parties shall bear their own costs on appeal.