**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| AMERICAN WHITEWATER; CENTER FOR BIOLOGICAL DIVERSITY; CONSERVATION CONGRESS; EARTH ISLAND INSTITUTE; ENVIRONMENTAL PROTECTION INFORMATION CENTER; KLAMATH FOREST ALLIANCE; SEQUOIA FORESTKEEPER, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, <br><br> Defendant - Appellee, | No. 24-6402 <br><br> D.C. No. 3:23-cv-03601-RFL <br> Northern District of California, <br> San Francisco <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Rita F. Lin, District Judge, Presiding

Argued and Submitted October 8, 2025
San Francisco, California

Before:  S.R. THOMAS, NGUYEN, and BRESS, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiffs-Appellants (collectively, "Whitewater") argue that the United States Forest Service violated the National Environmental Policy Act ("NEPA") when it approved projects to cut down trees burned by wildfires on National Forest land in 2020 and 2021 (collectively, the "Project"). The district court disagreed and granted the Forest Service's motion for summary judgment. Whitewater now appeals, and we affirm.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). "Because judicial review of agency decisions under NEPA is governed by the [Administrative Procedure Act], we must consider whether the agenc[y] complied with NEPA's requirements under the . . . deferential arbitrary and capricious standard." *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 871 (9th Cir. 2022). Because the parties are familiar with the history of this case, we need not recount it here.

I

The Forest Service analyzed a reasonable range of alternatives in the Project's Environmental Assessments (collectively, the "EA"). To determine whether an agency considered a reasonable range of alternatives, we ask (1) "whether the statement of purpose and need was reasonable," and (2) "whether the

2

range of alternatives considered was reasonable in light of that purpose and need." *League of Wilderness Defs.-Blue Mountain Biodiversity Project v. U.S. Forest Serv.*, 689 F.3d 1060, 1069 (9th Cir. 2012). Here, the Project's purpose and need statement was reasonable. As Whitewater admitted, the statement itself was not unreasonably narrow. The Forest Service's choice to prioritize safety in framing the Project's purpose and need was reasonable, even if it ultimately narrowed the range of alternatives that the agency considered. *See, e.g.*, *City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1155-57 (9th Cir. 1997) (upholding purpose and need statement despite agency's express policy goal to obtain a specific level of traffic flow because that goal was neither "unreasonable" nor "arbitrary or capricious").

Given the Project's purpose and need, the Forest Service considered a reasonable range of alternatives. Though the Forest Service only considered two alternatives in detail—action and no action—we have repeatedly upheld similar NEPA reviews as long as the agency did not fail to consider a reasonable alternative. *Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054, 1065 (9th Cir. 2023). Here, the Forest Service adequately explained why other alternatives were unreasonable because they were inconsistent with the Project's purpose and need.

3

Nor did the Forest Service improperly tier to the agency's "Hazard Tree Guidelines." These guidelines are "not substantive," *Earth Island Inst. v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010), and the agency properly incorporated them by reference under 40 C.F.R. § 1501.12 (2022). Indeed, the Forest Service cited these guidelines, provided an independent description of their content, and linked to a public webpage containing the guidelines in their entirety.

## II

The Forest Service took a "hard look" at the Project's likely impacts on wildlife, including the northern spotted owl. *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 916-17 (9th Cir. 2012). The agency's extensive discussion in both the EA itself and the incorporated wildlife analyses demonstrates that the Forest Service provided a "reasonably thorough discussion of the significant aspects of [the Project's] probable environmental consequences" on wildlife. *Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d 1372, 1376 (9th Cir. 1998) (quotation marks and citation omitted).

The Forest Service also took a "hard look" at the Project's cumulative effects. "[T]he determination of the extent and effect of [cumulative impact] factors . . . is a task assigned to the special competency of the appropriate agencies." *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208,

4

1215 (9th Cir. 1998) (second alteration in original) (citation omitted).  Whitewater has not demonstrated that the Forest Service's determination that the Project would lead to only minor or negligible cumulative effects was unreasonable.

Finally, the Forest Service—and the district court—cite to a specialist report and its underlying data to argue that the agency took a hard look at the Project's likely impacts on rivers protected by the Wild and Scenic Rivers Act.  But there is insufficient reference to these materials within the EA itself, and the Forest Service admitted that the specialist report was not provided to the public during the comment period.  The agency therefore erred when it relied on materials in litigation which the "public never saw" or "had an opportunity to comment on" during the administrative process.  *Or. Nat. Desert Ass'n v. Rose*, 921 F.3d 1185, 1191 n.4 (9th Cir. 2019).

This error was harmless, however, to Whitewater's challenge in this case.  Whether an agency's "failure to comply with NEPA" was harmless depends on "whether the error 'materially impeded NEPA's goals.'"  *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 860 F.3d 1244, 1252 (9th Cir. 2017) (quoting *Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095, 1104 (9th Cir. 2016)).  This is the case if "the error caused the agency not to be fully aware of the environmental consequences of the proposed action, thereby precluding informed

decisionmaking and public participation, or otherwise materially affected the substance of the agency's decision." *Id.* Neither is true here.

For one, the Forest Service's specialist report indicates that the agency was aware of the Project's impacts to protected rivers, but reasonably concluded that those impacts would be limited. The report demonstrates that the Project will affect less than fourteen miles of protected river segments and less than ten miles of eligible river segments. And all of the protected segments are designated as "scenic" and "recreational," which already permits the Forest Service to carry out vegetation management and timber harvesting within those areas.

Moreover, although Whitewater did not see the specialist report prior to this litigation, Whitewater stated at oral argument that the report's analysis contained the same "conclusory statement of no effect" as the EA, and thus did not change the substance of its "hard look" claim as to protected rivers. Whitewater therefore was not prejudiced by the Forest Service's failure to disclose the report during the administrative process.

For these reasons, we affirm the district court's order granting the Forest Service's motion for summary judgment.

**AFFIRMED.**